# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-1220

ALLSTATE INSURANCE COMPANY,

*Plaintiff-Appellant*,

v.

JOHN TOZER, GEORGETTE TOZER,
LINDSAY TOZER, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 02 C 1189—**Tim A. Baker**, *Magistrate Judge.*

_____

ARGUED NOVEMBER 9, 2004—DECIDED DECEMBER 28, 2004

_____

Before FLAUM, *Chief Judge*, and CUDAHY and POSNER,
*Circuit Judges*.

FLAUM, *Chief Judge*. This is a declaratory judgment
action brought by Plaintiff-appellant Allstate Insurance
Company ("Allstate"). Allstate seeks a declaration that the
claims of Kristina and Nicholas Keltner for negligent inflic-
tion of emotional distress caused by witnessing their
brother's death are subject to the same limit of liability ap-
plicable to the brother's injuries. The district court granted

summary judgment in favor of the insureds, and Allstate appealed. For the reasons stated herein, we reverse.

## I. Background

On January 3, 2001, Lindsay Tozer was driving her parents' car when the automobile struck a telephone pole. Riding in the car with Lindsay were Kyle Keltner and his two siblings, Nicholas and Kristina. Kyle was severely injured in the accident and eventually died. Kristina and Nicholas sustained relatively minor physical injuries in the crash, but allege that they suffered severe emotional distress witnessing their brother's injuries and death.

Lindsay's parents had insured the car (and therefore Lindsay) through a policy issued by Allstate. That policy limits Allstate's liability for bodily injury claims to $100,000 for "each person" and $300,000 for "each accident." After Kyle's estate sued (or threatened to sue)[1] Lindsay for wrongful death, Allstate settled the claim for $1.1 million. One hundred thousand dollars of this sum was paid under the Tozers' automobile policy; the remaining one million was paid under an umbrella policy that is not at issue in this case.

On February 22, 2002, Nicholas and Kristina filed a complaint against Lindsay in Hamilton County Superior Court. The complaint sought, among other things, damages for the "emotional distress as the result of seeing the injuries and death of their brother Kyle Keltner." Allstate hired Smith, Maley & Douglas to defend Lindsay in the state-court action, and the firm entered its appearance on March 21, 2002. The insurer did not issue a letter to Lindsay reserving its right to deny coverage under the policy.

---

[1] It is not clear from the record whether a lawsuit was actually filed on this claim.

On July 31, 2002, Allstate filed the instant suit in the Southern District of Indiana, seeking a declaration that Nicholas's and Kristina's emotional distress claims were subject to the $100,000 "each person" limit of liability applicable to their brother's injuries, and that Allstate had exhausted its liability for these claims by paying Kyle's estate $100,000 under the auto policy. At the close of discovery, the parties filed cross-motions for summary judgment. The district court ruled in favor of defendants, holding that the siblings had asserted separate bodily injury claims under the policy. The district court interpreted the policy's definition of bodily injury to include a claim for emotional distress so long as the plaintiff sustained a physical impact at the time of the event triggering the claim, even if that impact did not cause the emotional distress. The court reasoned that this analysis would accord with the "modified impact rule" applicable to negligent infliction of emotional distress claims announced in *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991).[2] Because Nicholas and Kristina each sustained physical trauma in the crash, the court held their claims to be separate bodily injuries under the policy and granted summary judgment in favor of the insureds. Allstate appeals.

## II. Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where there are no genuine issues of material fact, contract interpretation is particularly well-suited for sum-

---

[2] As discussed below, *Shuamber* is no longer good law. *See Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind. 2000).

mary judgment." *Anstett v. Eagle-Picher Indus., Inc.*, 203 F.3d 501, 503 (7th Cir. 2000). We review a district court's grant of summary judgment de novo. *Sullivan v. Ramirez*, 360 F.3d 692, 696 (7th Cir. 2004).

This appeal raises two issues: (i) whether the siblings' claims of emotional distress are subject to the "each person" limit of liability applicable to their brother's injuries; and (ii) whether Allstate is estopped from raising the argument because it assumed control over Lindsay's legal defense in state court. The parties agree that Indiana law governs both issues. We look first to Indiana Supreme Court precedent. Because we have located no case on point, "decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). "In the absence of [Indiana] authority, we may consider decisions from other jurisdictions." *Id.*; *see also Valerio v. Home Ins. Co.*, 80 F.3d 226, 228 (7th Cir. 1996); *Foster v. Cont'l Can Corp.*, 783 F.2d 731, 733-34 n.3 (7th Cir. 1986).

## A.  The "Each Person" Limit of Liability

Allstate contends that Nicholas's and Kristina's emotional distress claims are subject to the $100,000 "each person" limit of liability applicable to their brother's injuries and death. Because it has already paid Kyle's estate $100,000 to settle his wrongful death claim, Allstate argues that it has exhausted its liability for the siblings' emotional distress claims. Defendants assert that the emotional distress claims constitute separate bodily injuries entitled to additional coverage under the policy.

Despite the absence of Indiana Supreme Court precedent on this precise issue, settled principles of Indiana law guide our analysis. Under that law, the question of whether the siblings' claims fall under the "each person" limit of liability

applicable to Kyle's claim is an issue of contract interpretation. *See Bowers v. Kushnick*, 774 N.E.2d 884, 887 (Ind. 2002) ("Contracts of insurance are governed by the same rules of construction as other contracts."). "If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning." *Id.* (quoting *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985)). Indiana courts "will not find coverage under [an] insurance policy unless the language of the contract admits liability." *Am. Family Mut. Ins. Co. v. Hall*, 764 N.E.2d 780, 784 (Ind. Ct. App. 2002); *see also*, *e.g.*, *Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 515 (Ind. Ct. App. 1995); *Allstate Ins. Co. v. Kepchar*, 592 N.E.2d 694, 697 (Ind. Ct. App. 1992); *City of Muncie v. United Nat'l Ins. Co.*, 564 N.E.2d 979, 982 (Ind. Ct. App. 1991). Accordingly, we look to the terms of the policy to ascertain the scope of its coverage.

The policy provides that "Allstate will pay damages which an insured person is legally obligated to pay because of . . . bodily injury." (R.1, Ex. A at 6.) The policy defines bodily injury, subject to exceptions not relevant here, as "physical harm to the body, sickness, disease, or death." (*Id.*, Ex. A at 3.) Allstate limits its liability to $100,000 for "each person," up to a maximum of $300,000 for "each accident." (*Id.*, Ex. A at 1.) The policy defines these limits as follows:

> The limits shown on the Policy Declarations are the maximum we will pay for any single accident involving an insured auto. The limit stated for each person for bodily injury is our total limit of liability for all damages because of bodily injury sustained by one person, *including all damages sustained by anyone else as a result of that bodily injury*. Subject to the limit for each person, the limit stated for each accident is our total limit of liability for all damages for bodily injury.

(*Id.*, Ex. A at 8.) (emphasis added and deleted).

Under the plain language of the policy, Allstate's liability for bodily injuries suffered by Kyle and "damages sustained

by anyone else as a result of" his injuries is limited to a total of $100,000. It is clear that Nicholas's and Kristina's emotional distress claims are for "damages sustained . . . as a result of" Kyle's injuries: their state-court complaint alleges that they suffered emotional distress "as a result of seeing the injuries and death of their brother Kyle Keltner." Accordingly, these claims are subject to the $100,000 cap applicable to Kyle's injuries.

Stated otherwise, the siblings' claims do not amount to separate "bodily injuries" under the policy. A reasonable interpretation of the policy's definition of bodily injury— "physical harm to the body, sickness, disease, or death"— does not include emotional distress, at least where, as here, the distress is not caused by physical trauma.

Indiana caselaw confirms this reading. In *Wayne Township Board of School Commissioners v. Indiana Insurance Co.*, 650 N.E.2d 1205, 1210 (Ind. Ct. App. 1995), the Court of Appeals of Indiana held that a policy defining bodily injury to include "sickness or disease" was broad enough to encompass a child's claim that she suffered emotional distress after being sexually molested. *Id.* at 1210-11. The court reasoned that the emotional harm "results from a physical intrusion upon the child's body and therefore is bodily injury." *Id.* at 1211. It carefully limited its holding, however: "[T]he term 'bodily injury' does not include emotional damage that does not arise from a bodily touching." *Id.* at 1210. *See also Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 293 (Ind. Ct. App. 2003) (" 'bodily injury', as used in certain insurance policies, might include . . . emotional harm . . . but only if said injury was the result of a direct physical impact upon the [party seeking] recovery"). Although Nicholas and Kristina suffered minor physical injuries in the crash, they do not allege that these injuries caused their emotional distress. As stated above, the siblings' emotional distress claims arise out of witnessing

their brother's death. Thus, even under *Wayne Township*'s broad reading, the siblings' claims are not separate bodily injuries.

Seeking to avoid this result, defendants point to cases from other jurisdictions holding that emotional distress qualifies as a separate bodily injury under policies similar to the one at issue in this case. *See*, *e.g.*, *Pekin Ins. Co. v. Hugh*, 501 N.W.2d 508, 511-12 (Iowa 1993); *Anthem Cas. Ins. Co. v. Miller*, 729 A.2d 1227, 1228 (Pa. Super. Ct. 1999); *State Farm Mut. Auto Ins. Co. v. Ramsey*, 368 S.E.2d 477, 478 (S.C. Ct. App. 1988). These cases frame the issue as whether the underlying tort—negligent infliction of emotional distress—is an independent or derivative cause of action.[3] Because negligent infliction of emotional distress is an independent tort in those jurisdictions, that line of authority reasons that a claim of emotional distress also constitutes a separate "bodily injury" under the terms of an insurance policy. As long as the party suing the insured has stated a claim for negligent infliction of emotional distress, those courts obligate the insurer to defend and indemnify.

Defendants assert that the Indiana Supreme Court would follow this line of reasoning and, given that negligent infliction of emotional distress is an independent tort in Indiana, *Weatherford*, 714 N.E.2d at 185, hold that the siblings' claims are separate bodily injuries under the policy. Defendants rely on a footnote from *Wayne Township* as support for this prediction. The footnote mentioned that the court's reading of the insurance policy was "in harmony

---

[3]  A cause of action is "derivative" if it may be brought only where a separate, related claim is actionable. *Durham v. U-Haul Int'l*, 745 N.E.2d 755, 764 (Ind. 2001). An "independent" cause of action may be brought irrespective of the merits of an accompanying tort. *City of Anderson v. Weatherford*, 714 N.E.2d 181, 185 (Ind. Ct. App. 1999).

with Indiana law governing causes of action for infliction of emotional injury . . . . [requiring that] one must sustain a physical impact but need not suffer a physical injury." *Wayne Township*, 650 N.E.2d at 1211 n.3 (citing *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991)). Defendants argue that this language signaled the court's approval of the analysis articulated in the *Hugh-Miller-Ramsey* line of cases.

We disagree. First, *Wayne Township*'s analysis focused on the language of the policy, and the court was willing to conclude that certain types of mental anguish would constitute bodily injury only because the policy was broadly worded. The court's reference to Indiana tort jurisprudence was mere *dictum*, and its statement of that law is no longer correct. *See Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind. 2000) (overruling *Shuamber*). Second, and more fundamentally, accepting the approach advocated by defendants would require us to ignore the settled principle of Indiana law that the construction of an insurance policy is a matter of contract interpretation. *E.g.*, *Bowers*, 774 N.E.2d at 887; *Hall*, 764 N.E.2d at 784; *Ramirez*, 652 N.E.2d at 515; *Kepchar*, 592 N.E.2d at 697; *City of Muncie*, 564 N.E.2d at 982.

Other cases from the court of appeals reveal that the characterization of a claim as derivative or independent is irrelevant to whether the claim qualifies as a separate bodily injury under an insurance policy. In *Medley v. Frey*, 660 N.E.2d 1079, 1080-81 (Ind. Ct. App. 1996) the court held that a claim for loss of consortium did not amount to a separate bodily injury, where bodily injury was defined in the policy as "bodily harm, sickness or disease, including death that results." *Id.* at 1080. Even though consortium is a derivative tort under Indiana law, *Durham*, 745 N.E.2d at 764, the court made clear that its conclusion was governed only by the language of the policy:

> Where the automobile liability policy includes loss of consortium or loss of services in the definition of "bodily

injury," courts have logically concluded that the de-prived-spouse's loss of consortium claim is a distinct "bodily injury" and is not subject to the per person liability limit applicable to the injured-spouse, but is a separate "bodily injury" within the meaning of the policy.

*Medley*, 660 N.E.2d at 1081 n.1.

Similarly, in *Armstrong*, the court found that a claim of loss of love and companionship did not constitute a separate "bodily injury," defined in the policy at issue as "bodily harm, sickness or disease, including death that results." *Armstrong*, 785 N.E.2d at 292. It is clear that the result in *Armstrong* did not turn on underlying tort jurisprudence. The insureds in that case presented an argument, similar to the one advanced by the defendants here, that the court "should look beyond the four corners of this particular insurance policy to ascertain whether 'bodily injury' carries a broader meaning under Indiana case law." *Id.* The court disagreed: "[W]e may not look beyond the contract itself to ascertain the meaning of a term unless that term is ambiguous." *Id.*

*Medley* and *Armstrong* merely reiterate in this specific context what is generally true throughout Indiana insurance law: the extent of an insurer's liability is a matter of contract interpretation governed by the terms of the policy. The policy issued to the Tozers does not define "bodily injury" or the "each person" limit of liability with reference to whether the underlying claim is an independent or derivative tort action, or on whether the Keltner siblings state a valid claim of negligent infliction of emotional distress. These underlying questions of tort law are, therefore, irrelevant. *See, e.g., Galgano v. Metro. Prop. & Cas. Ins. Co.*, 838 A.2d 993, 997 (Conn. 2004) ("How the law defines particular claims does not control. Rather, we must look to the relevant policy language and apply the limits of liability as provided in the policy."); *see also Estate of Gocha v. Shimon*,

573 N.W.2d 218, 220 (Wis. Ct. App. 1997); *Mullen v. Walczak*, 653 N.W.2d 529, 532 (Wis. Ct. App. 2002). Because the policy caps Allstate's liability for all damages "resulting from" Kyle's injuries at $100,000, and Nicholas's and Christina's emotional distress result from his injuries, the insurer's liability for these claims is exhausted.


## B.  Estoppel

Defendants contend that Allstate is estopped from arguing that the limits of the policy have been exhausted because the insurer assumed Lindsay's defense in the Hamilton County action without issuing a letter to her reserving its right to deny coverage. The general rule in Indiana is that "the doctrines of estoppel and implied waiver are not available to create or extend the scope of coverage of an insurance contract." *Transcon. Ins. Co. v. J.L. Manta, Inc.*, 714 N.E.2d 1277, 1280 (Ind. Ct. App. 1999). One exception to this rule applies, however, "where 'an insurer defends an action on behalf of an insured, with knowledge that would provide a defense to coverage, but without a reservation of rights.'" *Id.* at 1281 (quoting *Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1104 (Ill. App. 1st Dist. 1996)). Defendants assert that because Allstate recognized the nature of the siblings' claims by the time it entered its appearance on Lindsay's behalf in the state-court action, it is estopped from arguing that the siblings' claims are not "bodily injuries."

Allstate rejoins that the doctrine of estoppel bars only claims of non-coverage. It argues that estoppel does not prevent it from asserting that its liability for an admittedly covered claim has been exhausted. Although Indiana has not addressed the question, several jurisdictions have accepted Allstate's position. *See Faber v. Roelofs*, 250 N.W.2d 817, 825 (Minn. 1977) (holding that by assuming the defense of its insured, insurance company was estopped from as-

serting non-coverage, but was free to argue that the policy's limits had been exhausted); *see also Martin v. United States Fid. & Guar. Co.*, 996 S.W.2d 506, 511 (Mo. 1999) (estoppel does not bar argument that liability has been exhausted); *Gambino v. Lamulle*, 715 So.2d 574, 576 (La. Ct. App. 1998) (same).

We need not resolve the exact contours of Indiana's estoppel doctrine, however, because defendants' argument fails for an independent reason. An insurer seeking to avoid a claim of estoppel by its insured has two options: "(1) file a declaratory judgment action for a judicial determination of its obligations under the policy; or (2) hire independent counsel and defend its insured under a reservation of rights." *Gallant Ins. Co. v. Wilkerson*, 720 N.E.2d 1223, 1227 (Ind. Ct. App. 1999). Allstate chose the first option by filing this lawsuit. Its failure to exercise the second option does not, therefore, estop it from arguing that the policy limit has been exhausted. Stated alternatively, Allstate prevented any prejudice to the insureds by filing this suit and clarifying its legal obligations. *See Terre Haute First Nat'l Bank v. Pac. Employers Ins. Co.*, 634 N.E.2d 1336, 1338 (Ind. Ct. App. 1993) (insured asserting estoppel must establish prejudice). Moreover, this is not a case in which prejudice may be presumed from the lengthy period of time between the insurer's realization that it has a defense to coverage and its communication of that defense to the insured. *Cf. Manta*, 714 N.E.2d at 1282. Allstate is therefore free to argue that its policy limits have been exhausted.

### III.  Conclusion

The doctrine of estoppel does not prevent Allstate from asserting that Nicholas's and Kristina's emotional distress claims are subject to the "each person" limit of liability applicable to their brother's bodily injuries. Since we conclude that Indiana law would accept plaintiff's position, we

REVERSE and REMAND with instructions to enter summary judgment in favor of Allstate.


A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***