926 So.2d 415 (2006)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Appellant,
v.
Barbara REIS and Joseph Reis, Appellees.
No. 1D05-576.
District Court of Appeal of Florida, First District.
March 14, 2006.
Rehearing Denied April 19, 2006.
*416 J. Wiley Horton and Leslie G. Street of Pennington, Moore, Wilkinson, Bell & Dunbar, P.A., Tallahassee, for appellant.
David H. Burns and Talley Kaleko of Cox & Burns, P.A., Tallahassee, for appellees.
ALLEN, J.
The appellant, State Farm Mutual Automobile Insurance Company, the insurer under an automobile insurance policy providing coverage to Robert, Barbara, and Joseph Reis, challenges a final judgment by which damages were awarded to appellees Barbara Reis and Joseph Reis pursuant to the policy's uninsured/under-insured motorist provisions for their pain and suffering as a consequence of witnessing the death of Robert Reis in an Alabama automobile accident. Robert Reis, whose death was caused by the negligence of an under-insured driver, was the husband of Barbara Reis and the father of Joseph Reis. State Farm does not challenge the trial court's determination that the appellees' damages were independently recoverable by the appellees under the applicable tort law of Alabama as part of their own bodily injuries arising from the accident. State Farm argues instead that the insurance proceeds available for these damages under the policy's coverage provisions were exhausted when State Farm paid Robert Reis's estate the policy limits for bodily injury for "Each Person." Because the ambiguous coverage provisions of the policy may reasonably be read to provide coverage to the extent of the greater "Each Accident" coverage limit, we construe the coverage provisions as providing this greater amount of coverage and affirm the final judgment.
State Farm properly argues that the insurance policy should be construed under Florida contract law, and it also properly offers no argument that Florida tort law need be considered. See, e.g., Langston v. Personal Service Ins. Co., 377 So.2d 993 (Fla. 2d DCA 1979).
The standard of review in construing this insurance contract is de novo. Management Computer Controls, Inc. v. Charles Perry Constr., Inc., 743 So.2d 627 (Fla. 1st DCA 1999). Insurance contracts are construed according to their plain meaning. But when the relevant language of an insurance policy is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the policy is considered ambiguous. An ambiguous provision is construed in favor of the insured and strictly against the drafter. Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161 (Fla.2003); Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29 (Fla.2000).
The material contract provisions relating to uninsured/under-insured motorist coverages for bodily injury are set forth in the policy as follows:

Bodily Injurymeans bodily injury to a person and sickness, disease or death which results from it.

. . .
We will pay damages for bodily injury an insured is legally entitled to collect *417 from the owner or driver of an uninsured motor vehicle. The bodily injury must be sustained by an insured and must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

. . .
The amount of coverage is shown on the declarations page under "Limits of LiabilityUEach Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
State Farm argues that this policy language means that when one insured seeks damages for bodily injuries suffered in an automobile accident and a second insured seeks damages for bodily injuries suffered in the same accident, but with the bodily injuries to the second insured having causally resulted from the bodily injuries to the first insured, the total amount payable under the policy to these two insureds is the amount of coverage specified for "Each Person." State Farm therefore sees the words "resulting from" as relating exclusively to causation and argues that when bodily injuries to a second insured would not have occurred "but for" the bodily injuries to the first insured, both insureds are subject to a single "Each Person" coverage limit.
State Farm relies upon the Eighth Circuit's opinion in State Farm Mutual Automobile Insurance Co. v. Wolff, 926 F.2d 755 (8th Cir.1991), as support for its construction of the policy language. In that case, Ms. Wolff was rendered a quadriplegic in a North Dakota automobile accident due to the negligence of a driver insured by State Farm. The "Limits of Liability" language in the liability coverage portion of the driver's policy was identical to the above-quoted "Limits of Liability" language in the appellees' policy in the present case. Ms. Wolff sought damages for her injuries and her husband sought damages for his resulting loss of consortium. After State Farm paid out the "Each Person" limit to Ms. Wolff, it took the position that no further coverage was available to cover Mr. Wolff's consortium claim. But Mr. Wolff argued that the "resulting from" language was intended to refer to derivative claims and that since his consortium claim was not a derivative claim under North Dakota law, he was entitled to recovery for his loss of consortium up to the "Each Accident" limit. The Wolff court wrote:
Wolff contends that his loss of consortium claim is not derivative, but a wholly independent cause of action. This is apparently meant to get around the "resulting from" language in the "Each Person" section. This argument, however, is irrelevant, because Wolff is arguing the legal attributes of a loss of consortium claim, and ignoring the nature of the injury. He cannot deny that without his wife's injuries, he would not have the cause of action. Therefore, his injury results from his wife's injuries, and the "Each Person" limit of liability applies.
Wolff argues that the "Each Accident" limit applies because his loss of consortium claim includes a claim for bodily injury because of his emotional distress and psychological injury. State Farm responds that the "Each Accident" limit is inapplicable because under the plain language of the policy Wolff would have *418 to have sustained a separate bodily injury in the same accident. Both parties have extensively argued the issue of whether a loss of consortium claim would be considered a separate bodily injury under North Dakota law. We need not decide this issue, however, because Wolff's claim fails the second requirement for "Each Accident" coverage, namely that the injury occur in the same accident. Under North Dakota law, the injury giving rise to a loss of consortium claim occurs after the accident.
In sum, the plain language of the policy does not require State Farm to cover Wolff's loss of consortium claim. The claim is subject to the "Each Person" limit of liability as an injury resulting from the bodily injury of another. The claim does not fall under the "Each Accident" limit of liability, however, because Wolff's injury occurred after the accident.
926 F.2d at 757 (citations omitted). The first paragraph of this excerpt from Wolff would seem to indicate that those injuries to Mr. Wolff which would not have occurred except for the injuries to Ms. Wolff were subject to the same "Each Person" coverage limit applicable to Ms. Wolff's injuries, and that Mr. Wolff therefore was not entitled to recover for these injuries up to the "Each Accident" coverage limit. Although this language seems to support State Farm's argument in the present case, the Wolff court did not end its analysis at this point. Somewhat confusingly, the court instead proceeded to address arguments relating to whether the "Each Accident" coverage limit might nevertheless apply to the loss of consortium claim, with the court concluding that the "Each Accident" coverage limit was inapplicable, not because the consortium claim resulted from the wife's injuries but because Mr. Wolff's injury "occurred after the accident."
Although Wolff appears to be of dubious value in supporting the construction urged by State Farm in the present case,[1] State Farm's suggested interpretation of the insurance contract is nevertheless one possible reading of the policy language. Significantly, however, other constructions of the policy language would support the trial court's ruling in this case.
As suggested by the husband's argument in Wolff, some courts have construed the "resulting from" language in the State Farm policy as referring to injuries and damages to additional persons which derive from the bodily injuries to the first injured person. In reading the policy language in this way, these courts limit the additional injured persons to the "Each Person" coverage amount only if their claims are "derivative" rather than "independent" in nature.
The unanimous decision of the Supreme Court of Montana in Treichel v. State *419 Farm Mutual Automobile Insurance Co., 280 Mont. 443, 930 P.2d 661 (1997), typifies decisions construing the State Farm policy language in this way. In that case, Mr. Treichel was seriously injured and later died due to the negligence of a driver insured by State Farm. Ms. Treichel witnessed the accident and observed the severe head injuries her husband suffered as a consequence of the collision. The "Limits of Liability" language in the liability coverage portion of the driver's policy was identical to the "Limits of Liability" language in the appellees' policy in the present case. After State Farm paid Mr. Treichel's estate the amount of the "Each Person" coverage under the driver's policy, Ms. Treichel brought an action against State Farm and the driver claiming that she was entitled to an additional recovery under the "Each Accident" coverage on her independent and non-derivative claim of negligent infliction of emotional distress. Because the court agreed with Ms. Treichel that her claim was independent and non-derivative under Montana law, it held that the "Each Accident" coverage limit applied.
In the present case, State Farm has not challenged the trial court's determination that the appellees' claims are independent and non-derivative claims. The trial court's ruling here therefore accords with the Treichel construction of the policy language.
Yet another approach is revealed by the unanimous decision of the Supreme Court of Louisiana in Crabtree v. State Farm Insurance Co., 632 So.2d 736 (La.1994). In that case, Mr. Crabtree was seriously injured due to the negligence of a driver insured by State Farm. Ms. Crabtree witnessed the accident and observed the severe injuries her husband suffered as a consequence of the collision. The "Limits of Liability" language in the liability coverage portion of the driver's policy was identical to the "Limits of Liability" language in the appellees' policy in the present case. Mr. and Ms. Crabtree brought an action against State Farm, seeking damages for Mr. Crabtree's injuries and for Ms. Crabtree's mental anguish as a consequence of witnessing the accident and her husband's injuries. The court referred to Ms. Crabtree's cause of action as a "Lejeune" claim. Although State Farm agreed that its driver's negligence was the sole cause of the accident, that Mr. Crabtree's damages exceeded the $25,000 "Each Person" coverage amount under the policy, and that Ms. Crabtree's mental anguish claim was also worth or exceeded $25,000, State Farm argued that its total liability was limited to the $25,000 "Each Person" coverage amount rather than the $50,000 "Each Accident" coverage amount because Ms. Crabtree's Lejeune claim was a derivative claim. Reading the policy language as a whole, the court concluded that the "Each Accident" coverage limit applied even if the Lejeune claim was derivative in nature. The court reasoned as follows:
The "resulting from" clause must be construed together with the policy language explaining the coverage for "Each Accident," which provides as follows:
Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
The policy language explaining the coverage for "Each Person," which includes the "resulting from" clause, provides:
Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury.
*420 In arguing Mrs. Crabtree's Lejeune claim "resulted from" Mr. Crabtree's bodily injuries and therefore falls within the per person policy limits even if Mrs. Crabtree's mental anguish constitutes "bodily injury," State Farm in effect construes the definition of "bodily injury to one person" to include "all injury, including bodily injury, and damages to others resulting from this bodily injury." Under State Farm's construction, all injuries including bodily injuries which "result from" another's bodily injury would be subject to the single per person limit while all other bodily injuries would be covered under the aggregate per accident limit. Thus, if an oncoming car hit Mr. Crabtree while he was driving with Mrs. Crabtree, and the injury to him caused him to drive off the road and hit a tree resulting in external, physical injury to Mrs. Crabtree, the latter's injury, under State Farm's interpretation, would "result from" the former's injury and therefore fall under the single bodily injury limit. Likewise, if, as a result of the impact, Mr. Crabtree was propelled off his motorcycle and into a pedestrian, the pedestrian's external, physical injuries would "result from" Mr. Crabtree's injuries and therefore fall under the single person bodily injury limits.
As illustrated by the foregoing hypotheticals, State Farm's construction of the policy language defining "bodily injury to one person" strains the meaning of the policy language, respectively enlarges and restricts the separate policy provisions beyond what is reasonably contemplated by the terms, and achieves an absurd result. If State Farm had intended "bodily injury to one person" to include "all injury, including bodily injury, and damages to others resulting from this bodily injury," the policy could have so provided. Moreover, State Farm's interpretation construes the "resulting from" clause in isolation at the expense of disregarding the clear and explicit language defining the aggregate coverage for "Each Accident" as "all damages due to bodily injury to two or more persons in the same accident."
Construing the policy provisions in light of each other so that each is given the meaning suggested by the policy as a whole, we conclude the policy language defining "bodily injury to one person" to include "all injury and damages to others resulting from this bodily injury" does not reasonably encompass bodily injury to others under the single person limit. We interpret the policy to mean instead that where one person suffers bodily injury, or where one person suffers bodily injury and one or more other persons suffer injury and damages other than bodily injury as a result of the former's bodily injury, the amount of coverage for bodily injury to one person applies ($25,000). This interpretation is consistent with State Farm's contractual obligation to "pay damages which an insured becomes legally entitled to pay because of . . . bodily injury to others." On the other hand, where two or more persons suffer bodily injury in the same accident, the aggregate amount of coverage for each accident applies ($50,000) even if one or more persons' bodily injury "results from" another's bodily injury. Additionally, the coverage for each accident is "subject to the amount shown under `Each Person'," referring to "the amount of coverage for all damages due to bodily injury to one person" ($25,000), up to the aggregate per accident limit ($50,000) for two or more persons.
In sum, because we conclude, for reasons which follow, that Mrs. Crabtree's mental anguish constitutes "bodily injury" *421 within the meaning of the policy, it follows under the clear and explicit terms of the policy construed as a whole that "bodily injury to one person" as defined therein does not encompass Mrs. Crabtree's Lejeune claim. Mrs. Crabtree's Lejeune claim therefore is not subject to the single person policy limit applicable to her husband's claim regardless of whether her mental anguish "results from" or "derives from" Mr. Crabtree's bodily injuries.
632 So.2d at 742-43.
In the present case, State Farm does not challenge the trial court's determination that the appellees' damages were recoverable as part of their own bodily injuries arising out of the accident. The trial court's ruling here therefore accords with the Crabtree construction of the policy language.
Because the ambiguous coverage provisions may reasonably be read to provide coverage to the appellees to the extent of the "Each Accident" coverage limit, the contract is properly construed as providing coverage in this amount. Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161 (Fla.2003); Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29 (Fla.2000). The final judgment is accordingly affirmed.
VAN NORTWICK, J., concurs.
POLSTON, J., dissents with written opinion.
POLSTON, J., dissenting.
This case arises from a tragic automobile accident in Montgomery, Alabama that resulted in the death of Robert Reis, the husband of appellee Barbara Reis and the father of appellee Joseph Reis. Appellees were passengers in the car and were also injured. The Alabama tortfeasor's insurance company paid its coverage limits, resulting in this under-insured motorist (UM) claim by the surviving Reises on their UM insurance policy issued by appellant State Farm. State Farm's policy included a $50,000 per person/$100,000 per accident, stacking UM provision. Because two cars were insured, the limits were stacked to $100,000 per person/$200,000 per accident.
Immediately after Robert Reis' death, State Farm paid the per person limit of $100,000 to the estate of Robert Reis in settlement of the estate's claim. The issue in this case is whether State Farm's payment of that $100,000 also limits the amounts that appellees can recover from State Farm for their pain, suffering, and mental anguish as a result of witnessing Robert Reis' death during the automobile accident. State Farm argues that the plain language of the UM policy expressly limits the amount owed to $100,000 by the definition of "Bodily injury to one person:"
The amount of coverage is shown on the declarations page under "Limits of LiabilityUeach Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage subject to the amount under "Each Person," for all damages due to bodily injury to two or more persons in the same accident.
(Emphasis added). I agree with State Farm that the language is not ambiguous. Substituting the names of the Reises in the policy language demonstrates that it limits the policy benefits as argued by State Farm: "`Bodily injury to one person [Robert Reis]' includes all injury and damages to others [Barbara Reis and Joseph Reis] resulting from this bodily injury [to Robert Reis]." This language plainly includes the *422 pain, suffering, and mental anguish to Barbara and Joseph Reis caused by the injury to Robert Reis and accordingly limits the policy benefits to $100,000. See Merriam-Webster's Collegiate Dictionary 999 (10th ed.1998) (defining "result" as to "arise as a consequence, effect, or conclusion"); Mullen v. Walczak, 257 Wis.2d 928, 653 N.W.2d 529, 531-32 (2002) (holding that uninsured motorist policy unambiguously limits the insurer's liability for all damages arising from one person's bodily injuries to the "each person" limit; because Mullen's emotional distress from witnessing his wife's death arose from her bodily injury, it was limited by the policy's language; the policy limit for "each person" was defined "for all damages sustained by all persons as the result of bodily injury to one person in any one accident"); Estate of Gocha v. Shimon, 215 Wis.2d 586, 573 N.W.2d 218, 219-22 (1997) (holding that identical State Farm policy language is unambiguous and that "each person" limitation applied because "the emotional stress of the Gochas would not have occurred but for the injury to Kyle").
Appellees argue that the UM policy language should be read to limit the additional injured persons to the "Each Person" coverage amount only if their claims are "derivative" rather than "independent" in nature. Under Alabama law, appellees note that their claims are independent, citing Daniels v. East Alabama Paving, Inc., 740 So.2d 1033 (Ala.1999) (holding that where a person is physically injured in a motor vehicle collision and witnesses the death of a relative in that same collision, the injured person's own bodily injury claim includes mental anguish damages for the grief and despair of witnessing that death). This argument, distinguishing between independent and derivative claims, is contrary to Florida law because it improperly makes the UM policy limits language dependent on the tort law of where an accident occurs (which may vary), instead of contract law. See State Farm Mut. Auto. Ins. Co. v. Olsen, 406 So.2d 1109, 1110-11 (Fla.1981) (applying significant relationships test in conflict of laws to tort cases, and noting that "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law").
In this case, the UM insurance contract was made in Florida, and is interpreted by Florida law. In Sturiano v. Brooks, 523 So.2d 1126 (Fla.1988), the Florida Supreme Court analyzed choice of law rules to determine that lex loci contractus is the better rule for determining the applicable law governing the rights and liabilities of the parties in an issue of automobile insurance coverage. In that case, the Sturianos purchased their automobile insurance in New York but moved to Florida to live during the winter months. Id. at 1129. In ruling that the lex loci contractus rule governs contracts for automobile coverage, and thus finding that New York law applied instead of Florida law, the court provided the following analysis:
Sturiano argues that in this modern, migratory society, choice of law rules must be flexible to allow courts to apply the laws which best accommodate the parties and the host jurisdiction. She contends that the archaic and inflexible rule of lex loci contractus does not address modern issues or problems in the area of conflict of laws. While it is true that lex loci contractus is an inflexible rule, we believe that this inflexibility is necessary to ensure stability in contract arrangements. When parties come to terms in an agreement, they do so with the implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary. This benefits both parties, not merely an *423 insurance company. The view espoused in the Restatement fails, in our opinion, to adequately provide security to the parties to a contract.
Although lex loci contractus is old, it is not yet outdated. The very reason Sturiano gives as support for discarding lex loci contractus, namely that we live in a migratory, transitory society, provides support for upholding that doctrine. Parties have a right to know what the agreement they have executed provides. To allow one party to modify the contract simply by moving to another state would substantially restrict the power to enter into valid, binding, and stable contracts. There can be no doubt that the parties to insurance contracts bargained and paid for the provisions in the agreement, including those provisions that apply the statutory law of that state.

Id. at 1129-30 (emphasis added).
The same rationale applied by the Florida Supreme Court in Sturiano applies in this case. If appellees' argument prevailed, the insurance policy limits would be dictated by the tort law of any jurisdiction where the accident may occurcontrary to the parties' right to know what the agreement they have executed provides. To allow one party to modify the contract simply by moving their automobile through another state would substantially restrict the power to enter into valid, binding, and stable contracts. Id.; see Lumbermens Mut. Cas. Co. v. August, 530 So.2d 293, 295 (Fla.1988) (ruling "that the rights and obligations of the parties under an insurance policy are governed by contract law since they arose out of an insurance contract;" "That the insured stands in a tort relationship to the uninsured motorist does not change the fact that an action by the insured against the insurer arises out of an insurance contract between the parties. Accordingly, the lex loci contractus rule determines the choice of law for interpretation of provisions of uninsured motorists clauses in automobile insurance policies just as it applies to other issues of automobile insurance coverage."); Barnier v. Rainey, 890 So.2d 357, 359 (Fla. 1st DCA 2004) (stating, "[i]n that the rights and obligations of parties under a policy of insurance arise out of a contract of insurance, they are governed by contract law"); compare Shapiro v. Associated Int'l Ins. Co., 899 F.2d 1116, 1119 (11th Cir.1990) (distinguishing a contract relating to real property, which remains stationary and immobile, to "a contract for automobile insurance where the location of the insured risk can vary as readily and as quickly as an automobile can move," therefore requiring the lex loci contractus rule to determine the rights and risks of the parties to automobile insurance policies on the issue of coverage).
Moreover, the policy language does not make any distinction about how the claim for injury and damages to others is broughtwhether it is through an independent cause of action or is derivative. Analyzing a very similar Allstate automobile insurance policy, defining "bodily injury sustained by one person," to include "all damages sustained by anyone else as a result of that bodily injury," the Seventh Circuit Court of Appeals held that sibling passengers who witnessed their brother's death in an automobile accident were subject to the "each person" limits of liability. Allstate Ins. Co. v. Tozer, 392 F.3d 950, 953, 955 (7th Cir.2004). Rejecting the siblings' argument that because their claim for emotional distress is a separate cause of action it is not limited by the "per person" limits of the policy, the court stated that "fundamentally, accepting the approach advocated by [the siblings] would require us to ignore the settled principle of Indiana law that the construction of an *424 insurance policy is a matter of contract interpretation." Id. at 954-55. The court reasoned:
The policy issued to the Tozers does not define "bodily injury" or the "each person" limit of liability with reference to whether the underlying claim is an independent or derivative tort action, or on whether the Keltner siblings state a valid claim of negligent infliction of emotional distress. These underlying questions of tort law are, therefore, irrelevant. Because the policy caps Allstate's liability for all damages "resulting from" Kyle's injuries at $100,000, and [the siblings'] emotional distress result from his injuries, the insurer's liability for these claims is exhausted.
Id. at 955 (citations omitted).
Interpreting the contract language, the court concluded:
Under the plain language of the policy, Allstate's liability for bodily injuries suffered by Kyle and "damages sustained by anyone else as a result of" his injuries is limited to a total of $100,000. It is clear that [the siblings'] emotional distress claims are for "damages sustained... as a result of" Kyle's injuries: their state-court complaint alleges that they suffered emotional distress "as a result of seeing the injuries and death of their brother Kyle Keltner." Accordingly, these claims are subject to the $100,000 cap applicable to Kyle's injuries.
Id. at 953. In the instant case, whether the appellees' claim is derivative or independent under tort law is likewise irrelevant, and the plain language limits the claims of the surviving Reises, for their pain, suffering, and mental anguish suffered as a result of witnessing Robert Reis' death, to the $100,000 cap applicable to Robert Reis' injuries.
Similarly, in Galgano v. Metropolitan Property & Casualty Insurance Co., 267 Conn. 512, 838 A.2d 993 (2004), the Connecticut Supreme Court rejected the argument that it matters whether the plaintiff's emotional injuries are independent or derivative. The relevant policy language and the limits of liability it provides controls. Id. at 997. The court stated:
By the express terms of the policy, the bodily injury to the plaintiff's son includes all claims by all persons for damages for bodily injury resulting from the bodily injury to the plaintiff's son. It is beyond dispute that, but for the bodily injury to this son, the plaintiff would not have suffered any emotional injuries. In other words, the plaintiff's injuries are the natural and probable consequence of his having witnessed the accident that injured his son. Therefore, the measure of the plaintiff's recovery is not governed by the fact that this separate damages arose out of the same accident, but by the fact that they arose out of the same bodily injury to his son.
Id. at 997-98.
The nature of the injury, not the legal attributes of the claim that are controlled by varying states' tort laws, applies to the policy's limits.[2] In State Farm Mutual Automobile Ins. Co. v. Wolff, 926 F.2d 755 (8th Cir.1991), the court analyzed the policy limits under an identical definition for *425 "Bodily injury to one person." The court noted that Wolff's argument, that his loss of consortium claim is a wholly independent claim rather than derivative and therefore not subject to the "per person" limits, relates to "the legal attributes" of the claim and ignores the nature of the injury. Id. at 757. "He cannot deny that without his wife's injuries, he would not have the cause of action. Therefore, his injury results from his wife's injuries, and the "Each Person" limit of liability applies." Id.; see also Allstate Ins. Co. v. Clohessy, 32 F.Supp.2d 1333, 1334-35 (M.D.Fla.1998) (ruling that the claimants' separate, independent, and non-derivative claims on the emotional distress they suffered as a result of witnessing their family member's death were limited to the per person amount of liability; the "per person" policy limit included "the damages sustained by anyone else as a result of that bodily injury, sickness, disease, or death"), question certified to Florida Supreme Court, 199 F.3d 1293 (11th Cir.2000), review dismissed, 763 So.2d 1042 (Fla.2000).
The reasons contained in the cases cited above are more persuasive to me than those in the cases cited by appellees and relied on by the majority. See Treichel v. State Farm Mut. Auto. Ins. Co., 280 Mont. 443, 930 P.2d 661 (1997) (holding that the policy language did not limit plaintiff's claim because it was independent); Crabtree v. State Farm Ins. Co., 632 So.2d 736, 742 (La.1994). The Crabtree decision is particularly unpersuasive because the court adds language in the policy not there: "We interpret the policy to mean instead that where one person suffers bodily injury, or where one person suffers bodily injury and one or more other persons suffer injury and damages other than bodily injury as a result of the former's bodily injury, the amount of coverage for bodily injury to one person applies." (Emphasis added). The express policy language, not that supplied by a court, should control the limits.
Because the policy language is unambiguous, I would reverse and remand to the trial court with instructions for entry of the judgment excluding the jury's award of $100,000 in damages to Barbara Reis and Joseph Reis for their pain and suffering resulting from the death of Robert Reis.[3] Therefore, I respectfully dissent.
NOTES
[1] Two intermediate appellate court decisions from Wisconsin not relied upon by State Farm in the present case, Estate of Gocha v. Shimon, 215 Wis.2d 586, 573 N.W.2d 218 (1997), and Mullen v. Walczak, 257 Wis.2d 928, 653 N.W.2d 529 (2002), provide superficial support for State Farm's argument, but the Supreme Court of Wisconsin has explained that these cases actually construe the policy provisions as distinguishing between "independent claims" and "derivative claims," and only preclude overall recovery in excess of the "Each Person" coverage in the situation in which the claims of multiple insureds are based upon a single bodily injury. State Farm Mutual Automobile Insurance Co. v. Langridge, 275 Wis.2d 35, 683 N.W.2d 75 (2004). These decisions have no application in the present case because State Farm does not challenge the trial court's determination that the appellees' damages were independently recoverable as part of their own bodily injuries arising out of the accident.
[2] An independent right of recovery is derivative in the sense that it is "dependent upon a wrong committed upon another person." See Geico Gen. Ins. Co. v. Arnold, 730 So.2d 782, 784 (Fla. 3d DCA 1999) (holding that the "per person" policy limits paid to the deceased minor child's estate included the parents' independent right of recovery for the value of the loss of support and services and for their own pain and suffering caused by his loss, and rejecting the parents' argument that the limitation did not apply because it was independent).
[3] A new trial is not required because the special verdict form included questions asking the jury "What is the amount of damages for pain, suffering, and mental anguish sustained by Barbara Reis as a result of witnessing her husband's death during the May 11, 2002 auto accident?" and "What is the amount of damages for pain, suffering, and mental anguish sustained by Joseph Reis as a result of witnessing his father's death during the May 11, 2002 auto accident?" The final judgment was limited by stipulation of the parties to the policy limits.