WELLS, Chief Judge.
Certain Interested Underwriters at Lloyd’s London Subscribing to Policy No. 828-2037 (“Lloyd’s”) appeals from a declaratory judgment awarding homeowner Pitu, Inc., $1,240,199.67, plus interest for water damage sustained following a water pipe rupture. Because the insurance policy at issue expressly limits recovery for such damage to $25,000, we reverse.
On May 29, 2009, Lloyd’s issued an “all risk” homeowner’s insurance policy to Pitu for a dwelling located in Miami-Dade County. While the policy was in effect, a water pipe located in one of the upper stories of the home burst, resulting in extensive water damage to both the premises and personal property located therein. Pitu estimated the damage sustained to the dwelling at $907,325.65 and to its personal property at $40,236.00.
Lloyd’s acknowledged that the claimed water damage was a covered loss under the policy and estimated that loss to be $673,378.28. However, relying on a policy endorsement limiting coverage for water damage to $25,000, Lloyd’s agreed to pay only that amount for the loss sustained.
Pitu sued Lloyd’s for breach of contract and for a declaratory judgment claiming *292 that, rather than limiting coverage provided by the policy, the endorsement “provided coverage for water damage that would not be covered under the insurance policy.” [1] More specifically, Pitu alleged that, “for an additional premium,” the endorsement provided $25,000 in coverage for water damage otherwise expressly excluded from coverage under the policy.
Following a hearing on the parties’ cross motions for summary judgment, at which the court below stated “I don’t think that limitation [endorsement] applies to the water damage that’s complained of here,” judgment was entered in Pitu’s favor. Because the policy and endorsement unambiguously limit coverage for the damage sustained to $25,000, we reverse.
Our standard of review is de novo. See State Farm Mut. Auto. Ins. Co. v. Menendez, 24 So.3d 809, 810 (Fla. 3d DCA 2010) (“Because the interpretation of an insurance contract presents a question of law, this Court’s standard of review is de novo.”), rev’d on other grounds, 70 So.3d 566 (Fla.2011); State Farm Mut. Auto. Ins. Co. v. Reis, 926 So.2d 415, 416 (Fla. 1st DCA 2006) (confirming de novo standard of review for construing an insurance contract). “Insurance contracts, like other contracts, ‘should receive a construction that is reasonable, practical, sensible, and just.’ ” State Farm Mut. Auto. Ins. Co. v. Fischer, 16 So.3d 1028, 1031 (Fla. 2d DCA 2009) (quoting Gen. Star. Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So.2d 26, 29 (Fla. 2d DCA 2004)). To this end, “insurance contracts are interpreted according to the plain language of the policy except ‘when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction.’ ” Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.2005) (quoting State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986)). Moreover, “a single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders.” State Farm Mut. Auto. Ins. Co. v. Mashburn, 15 So.3d 701, 704 (Fla. 1st DCA 2009).
The policy at issue here is an all risk policy which covers both the dwelling (Coverage A) and the personal property in it (Coverage C). Coverages A and C do not insure for loss “[c]aused by,” among other things, wear and tear, deterioration, latent defect, mechanical breakdown, rust and corrosion, unless those causes result in not otherwise excluded water damage from a plumbing system:
We insure against risk of direct loss to property described in Coverages A ... and C, only if that loss is a physical loss to property.
We do not insure, however, for loss:
1. Under Coverages A ... and C:
a. Excluded under SECTION I— EXCLUSIONS
b. Caused by:
[[Image here]]
4. Any of the following:
(a) Wear and tear, marring, deterioration;
(b) Inherent vice, latent defect, mechanical breakdown;
(c) Smog, rust or other corrosion, mold, wet or dry rot;
[[Image here]]
If any of these cause water damage not otherwise excluded, from a plumbing ... system ..., we cover *293 loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system....
Further, as to Coverage C, while there is no coverage for breakage of certain personal property, there is coverage for breakage that results from water not otherwise excluded by the policy:
We do not insure, however, for loss:
[[Image here]]
3. Under Coverage C caused by:
(a) Breakage of:
(1) Eyeglasses, glassware, statuary, marble;
(2) Bric-a-brac, porcelains and similar articles other than jewelry, watches, bronzes, cameras and photographic lenses.
There is coverage for breakage of the property by or resulting from:
[[Image here]]
(6) Water not otherwise excluded....
Because none of the policy’s exclusions apply to the water damage at issue here, the parties conceded below that the complained of water damage was a covered loss under these policy provisions.[2] The parties instead disputed application of a policy endorsement limiting recovery for water damage loss, with Lloyd’s claiming the endorsement limits Lloyd’s liability for covered water losses to $25,000 and Pitu arguing — and the court apparently agreeing — that the endorsement extends an additional $25,000 in coverage for water damage otherwise excluded by the policy. Nothing in the policy supports the latter proposition. To the contrary, the endorsement at issue is clear and unambiguous in its limitation of coverage for those losses covered by the policy to $25,000:
ENDORSEMENT
THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
WATER DAMAGE AGGREGATE LIMITATION
READ CAREFULLY
In consideration of the premium charged, it is hereby understood and agreed that for such insurance as is afforded by this policy, loss(es) paid arising out of, or caused by, water damage shall be subject to a maximum amount of $25,000 during the policy term.
ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.
Recovery for the losses claimed by Pitu should, therefore, have been limited to $25,000.[3]
*294 The judgment on appeal is therefore reversed with this matter remanded for entry of judgment in Lloyd’s favor.

. Pitu has also sued the insurance agency and the agent that sold it the subject policy; these claims remain pending below and are not subject to this appeal.

. Coverages A and C exclude coverage, among other things, for (1) discharge, leakage, or overflow from "[fjreezing of a plumbing ... system ... while the dwelling is vacant” unless reasonable care has been taken to heat the building or shut off the water supply; and (2) freezing, thawing, pressure or weight of water or ice to fences, pavement, patios/swimming pools, foundations, retaining walls, bulkheads, piers, wharfs or docks. The policy itself expressly excludes coverage for the following types of water damage: (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these; (2) water which backs up through sewers or drains or which overflows from a sump; and (3) water below the surface of the ground which exerts pressure or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure. By virtue of a separate policy endorsement not at issue here, the second of these water damage exclusions was deleted and, for an addition premium, Pitu received up to $5,000 in coverage for loss caused by water back up and sump overflow.

. We also reject the argument made for the first time on appeal that the primary focus of this matter should be on the broken pipe *294 rather than the water which came from it which, according to Pitu, proximately caused the entire loss making the endorsement inapplicable. The endorsement expressly applies to "loss(es) ... arising out of, or caused by, water damage.” (Emphasis added). "The term ‘arising out of' is broader in meaning than the term 'caused by’ and means 'originating from,' ‘having its origin in,’ ‘growing out of,’ 'flowing from,’ ‘incident to’ or ‘having a connection with'_” Hagen v. Aetna Cas. & Sur. Co., 675 So.2d 963, 965 (Fla. 5th DCA 1996); see also Nat’l Indem. Co. v. Corbo, 248 So.2d 238, 240 (Fla. 3d DCA 1971) (recognizing that "arising out of” means "causally connected with, not proximately caused by”); Taurus Holdings, Inc., 913 So.2d at 533 (confirming "the proposition that ‘arising out of does not equate to proximate cause — at least in coverage provisions”). Thus, regardless of whether the broken pipe was the proximate cause of the loss, there is no dispute, and indeed Pitu did not dispute, that this loss was incident to or connected with the water flowing from it.