CHEHARDY, Judge.
Plaintiff, Matthew Carderara,[1] appeals a district court judgment in his favor and against defendant, John Taranto, in the sum of $250, together with judicial interest from date of demand, and for all costs. The judgment also dismissed the third party demand filed by Taranto against Linda Romano Garner.
The record reflects that on April 7, 1977 an exchange of properties, consisting of two side-by-side residential lots of identical value ($10,000), was executed by notarial act between John Taranto and Carolyn Gau-threaux, wife of/and Matthew J. Carder-ara. The record further establishes that on April 6,1977 the Carderaras’ application for a $21,500 loan from Fidelity Homestead Association (Fidelity), for the purpose of constructing a home on the lot they had received from Taranto, was approved, to be completed on the direct reduction plan at an interest rate of 8V<i% per annum, for a term of 20 years, with monthly payments of interest and principal to be $183.21.
The Carderaras subsequently received a letter dated July 13, 1977 from Fidelity informing them that examination of the title to the property had been completed. The letter also stated, however, that because John Taranto had acquired the lot in question while he was married to and living and residing with Linda Marie Garner (from whom he was later divorced), and because, in Taranto’s transfer to the Car-deraras, this prior wife, who had a presumptive community interest, did not appear, Fidelity required that she divest herself of whatever interest she may have in and to this property.
*494 Subsequently Mrs. Garner executed an authentic act, signed by herself and all of the parties to the subject litigation by which she assigned all of her rights, title and interest in the Carderaras’ property to them in consideration that all of her claims of community interest be reserved, by mutual consent of herself and John Taranto, against the property which Taranto had received from the Carderaras in the exchange. This act was dated January 24, 1978.
On December 22, 1977, the Carderaras received another letter from Fidelity reciting that their application for a loan on the subject property had been approved for $21,700 at an interest rate of 8%% per an-num for a term of 20 years, monthly payments of interest and principal to be $191.77.
Matthew Carderara subsequently filed suit against Taranto, claiming that the cloud on the piece of property received from him in the exchange constituted a breach of warranty guaranteed by the defendant in the exchange, and claiming damages of $189.87 (extra interest costs resulting from interim financing), $272.50 (closing fees for interim financing), and $1,680 (additional interest involved in personal finance as a result of delay in obtaining clear title.
At the trial on the merits of the case Mrs. Carderara testified she also obtained interim financing in order to cover indebtedness to their contractor and she identified a disclosure statement of loan from the First National Bank of St. Bernard Parish (St. Bernard) which indicated that a loan, consisting of a collateral mortgage and note, was made by the Carderaras on September 15, 1977 for $21,715 and that the interest paid at maturity, on December 14, 1977, would be $537.50. Although plaintiffs had only asked for interest on this loan of $189.37, at trial Mrs. Carderara further testified that she thought the 90-day loan had been renewed three times. She also identified a receipt from her attorney in the amount of $250 for loan closing legal fees on the collateral mortgage.
Mrs. Carderara additionally stated at trial that her contractor had only been paid' a down payment for construction of the house and her agreement with him was that, upon completion of the house and receipt of the loan from Fidelity, he would be paid the balance owed to him. She admitted that she would have also had to pay interest to Fidelity during the delay period, had she timely received the loan from that bank, but she maintained that the rate would have been lower. She was unable to explain, however, how the difference between the two interest rates was calculated by her attorney, and no receipts were produced by the Carderaras of interest actually paid on the collateral mortgage note.
Both Mr. and Mrs. Carderara testified that after they received notice of the higher interest rate being charged by Fidelity, they did not seek financing from any other lending institution to see if a lower rate of interest could be obtained.
In his written reasons for judgment, the district court judge stated in part:
“The plaintiff introduced documents into evidence showing that they first applied for a loan at a lessor interest rate than what they finally received, and the basis of this suit was the difference in said rate. However, there was no calculations, no witnesses, no experts who testified between the mathematical differences of the rate of interest. In fact, no one at all testified from First National Bank of St. Bernard as an element of damages or losses. No other receipts for any expenses were introduced into evidence with the exception of the $250.00 bill paid to Stephen Perez, Attorney, for his services.
“Therefore, although the Court finds that the plaintiff was aggrieved by the act of exchange through no fault of his own, it must'render judgment only for the damages that they actually proved, to-wit, the sum of $250.00.”
We agree. A plaintiff must prove with legal certainty every item of damages claimed. Craig v. Burch, 228 So.2d 723 (La.App. 1st Cir. 1969). In the present case, any damages awarded to the Carderaras for *495 the V2% difference in the interest rates on the 20-year loan from Fidelity would be speculative without the aid of an expert witness to establish how the difference should be calculated; in fact, no method of calculation was even suggested in plaintiffs’ testimony at the trial on the merits. Although counsel for plaintiffs states in his brief to this court that the difference can be calculated by “simple mathematics,” this is simply not the case without the aid of expert testimony.
Regarding the collateral mortgage loan from St. Bernard, any damages due and, owing would only be the difference between the interest actually paid to that lending institution and what interest would have been paid on the loan,from Fidelity had it been granted at the time the money became due and owing to the contractor. Once again, without the aid of expert testimony or receipts indicating interest actually paid on the note, this is an amount impossible to calculate accurately or with any certainty.
For the reasons assigned, the district court judgment is affirmed in all respects.

AFFIRMED.

. “Carderara” is also spelled “Carderera” in the trial court judgment and other parts of the record.