# Third District Court of Appeal

## State of Florida

Opinion filed August 16, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1436
Lower Tribunal No. 20-1425
_____

**People's Trust Insurance Company**,
Appellant,

vs.

**Sheila Banks, et al.**,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Brett Frankel and Jonathan Sabghir (Deerfield Beach); and Cole, Scott & Kissane, P.A., and Mark D. Tinker (Tampa) and Scott A. Cole, for appellant.

The Nation Law Firm, LLP, and Mark A. Nation (Longwood), for appellees.

Before LOGUE, C.J., and HENDON and GORDO, JJ.

HENDON, J.

People's Trust Insurance Company ("PTIC") appeals from an adverse final summary judgment.  We reverse.

Facts

The appellees, Sheila and Randy Banks ("Insureds" or "Appellees"), own a home covered by an insurance policy issued by PTIC.  That policy insures against "direct physical loss to property." The policy excludes losses caused by "wear and tear" and "deterioration." Unless the loss is "otherwise excluded," the policy covers insured property damaged by an accidental discharge of water from within a plumbing system, including the cost to tear out and replace any part of the building necessary to access and repair that system, but does not cover the system itself. All of the enumerated causes of loss are subject to an indirect and concurrent cause provision, which reads,

> SECTION I – EXCLUSIONS A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area. . . .

One of the exclusions is for certain categories of water loss, including flood, sump overflows, etc.  In order to take advantage of a reduced premium, the Insureds opted for a Water Damage Exclusion ("WDX") endorsement to their policy.  That endorsement replaced the policy's basic water exclusion,

2

and defined water to include, among other things, "[d]ischarge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance," and "[c]aused by or resulting from human or animal forces or any act of nature."

In addition to the WDX endorsement, the Insureds also purchased a less expensive but more restrictive Limited Water Damage Coverage ("LWD") endorsement. The relevant provision provides coverage for "sudden and accidental direct physical loss to covered property by discharge or overflow of water or steam from within a plumbing . . . system." The limit of liability of the LWD endorsement provides,

LIMIT OF LIABILITY

The total limit of liability for all damage to covered property provided by this endorsement is $10,000.00 per loss. This limit applies to all damaged covered property under Coverage A, B, and C combined.

This limit also includes the cost of tearing out and replacing any part or portion of the covered building or other structure necessary to access or repair that part or portion of the system or appliance from which the discharge occurred or cause the overflow.

(emphasis added).

In November 2018, the Insureds experienced a water loss caused by the deterioration of their property's old cast iron plumbing. They timely

3

notified PTIC. The Insureds sought two kinds of coverage in their claim: 1) coverage for the actual physical damage the water caused, and 2) coverage for the cost of having to excavate the damaged pipes from the property and repair the plumbing system. PTIC accepted the loss as covered by the LWD endorsement. PTIC explained in a letter to the Insureds that the coverage existed only as provided by the LWD endorsement, and only up to the $10,000.00 limit. Without the LWD endorsement, the loss would not have been covered pursuant to the WDX endorsement. PTIC tendered the full $10,000.00 limit to the Insureds, minus a $2,000 payment PTIC had already made.

The Insureds subsequently sued PTIC for breach of contract, seeking the actual cash value of the loss and damages, and declaratory relief. PTIC answered, asserting full payment under the LWD provision, thus discharging its contractual obligation. Both parties moved for summary judgment.

The Insureds argued below, and here, that the WDX provision in the policy did not apply to their loss because the wear and tear, and deterioration of the cast iron pipes was not caused by human, animal, or any "act of nature," as stated in the WDX endorsement. They point out that the phrase "act of nature" is not defined. Instead, they contend that the

corrosion in the pipes was a "natural process," not an "act of nature," thus, the WDX exclusion for "act of nature" is inapplicable. As a result, they maintain, the WDX endorsement does not apply, and the LWD endorsement was not triggered. Even if it was, they argue, the LWD only applies to limit the actual physical damage caused by water from a plumbing system and does not limit coverage for the cost of tearing out any part of the Insured's home to repair the plumbing system from which the water escaped.

PTIC, on the other hand, asserted that, in exchange for a reduced premium, the Insureds accepted the WDX endorsement which eliminated all coverage for water damage. The Insureds then bought back limited water damage coverage via the LWD endorsement, which covered "direct physical loss . . . by discharge or overflow of water . . . from within a plumbing system." That coverage came with a payout limit of $10,000.00, which limit expressly included tear-out costs, and which PTIC duly paid pursuant to the LWD contract.

In August 2020, the trial court heard both motions for summary judgment and granted partial summary judgment in favor of the Insureds, and denied PTIC's motion for summary judgment. The trial court concluded that the wear and tear, and deterioration, was not caused by an "act of

5

nature," as required by the WDX endorsement, and the LWD endorsement did not apply to the cost of tearing out and replacing the plumbing in the Insureds' property. The parties agreed to take the claim to appraisal pursuant to the policy terms. The appraisal award totaled $113,318.17. PTIC appeals from the final judgment granted to the Insureds pursuant to the appraisal award.

Discussion

Insurance policy construction is a question of law subject to de novo review. People's Tr. Ins. Co. v. Progressive Express Ins. Co., 336 So. 3d 1207, 1209 (Fla. 3d DCA 2021); Arguelles v. Citizens Prop. Ins. Corp., 278 So. 3d 108, 111 (Fla. 3d DCA 2019); Fayad v. Clarendon Nat'l. Ins. Co., 899 So. 2d 1082, 1085 (Fla. 2005) (citing Dimmitt Chevrolet, Inc. v. Se. Fid. Ins. Corp., 636 So. 2d 700, 701 (Fla. 1993)) ("[T]he issue of whether an exclusionary clause precludes coverage for damages is a question of law."). Additionally, the appellate court must construe insurance policies in a reasonable, practical, and just manner. First Pros. Ins. Co. v. McKinney, 973 So. 2d 510 (Fla. 1st DCA 2007). Where the language in an insurance contract is plain and unambiguous, "a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." Wash. Nat'l. Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla.

6

2013); U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007) (holding that, in construing insurance contracts, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect).

This Court declines to interpret the insurance policy language at issue in such a way as to separate the ordinary meaning of "act of nature" from "natural process." To conclude that the deterioration of the Insureds' old cast iron plumbing pipes is not an "act of nature" would lead to an absurd result, i.e., coverage costs in excess of what was expressly excluded from the bargained-for coverage. "[A] single policy provision should not be read in isolation and out of context, for the contract is to be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders." State Farm Mut. Auto. Ins. Co. v. Mashburn, 15 So. 3d 701, 704 (Fla. 1st DCA 2009).

Recent appellate cases involving the identical policy language, and as applied to similar facts, have interpreted the phrase "act of nature" to mean ordinary natural processes rather than extraordinary, unforeseen events, or events usually classified as an "act of God." See Dodge v. People's Tr. Ins. Co., 321 So. 3d 831, 835 (Fla. 4th DCA 2021) ("Corrosion, the chemical reaction between iron and moist air, is an act of nature or a

7

naturally occurring force. Thus, the rust or corrosion occurred because of a natural act."); Rosa v. Safepoint Ins. Co., 350 So. 3d 468, 471 (Fla. 5th DCA 2022) ("[T]he rust or other corrosion that occurred in the pipes in [the insured's] dwelling, regardless of whether it was perhaps preventable or controllable, was a naturally occurring force and thus an act of nature. As an act of nature, the loss came within the policy exclusion for 'any act of nature.'"). Notably, in Santana v. People's Trust Insurance Co., 48 Fla. L. Weekly D646 (Fla. 3d DCA Mar. 29, 2023) (citation opinion), this Court has chosen to follow the precedent set by Dodge and Rosa. See also Certain Interested Underwriters at Lloyd's London v. Pitu, Inc., 95 So. 3d 290, 293 (Fla. 3d DCA 2012) (finding the water loss exclusion endorsement was clear and unambiguous in its limitation of coverage for those losses covered by the policy to $25,000); Herrington v. Certain Underwriters at Lloyd's London, 342 So. 3d 767, 770 (Fla. 4th DCA 2022) ("The policy language covers 'loss caused by the water *including the cost of tearing out*' parts of the structure to repair the system which leaked. 'Tear out' costs are thus part of the water damage loss. Therefore, the endorsement limiting all water damage loss includes tear out expenses."); Panettieri v. People's Tr. Ins. Co., 344 So. 3d 35, 40 (Fla. 4th DCA 2022) (holding no separate and distinct coverage exists for tear out costs apart from water damage); Yanes

8

v. Nat'l Specialty Ins. Co., 548 F. Supp. 3d 1307, 1315 (S.D. Fla. 2021) ("Reading the provisions of the Subject Policy together as a whole, the Court finds that [the insurer's] liability under the Subject Policy—including liability for Tear Out Coverage—*is* limited by the [Limited Water Damage Coverage Endorsement] to $10,000.00.").

As explained in Panettieri,

> A plain reading of the exception to c. (5) indicates that tear out coverage is *included as part* of the loss to property unless the loss is excluded. Therefore, no separate and distinct coverage exists for tear out costs apart from water damage, as Insured argues. The Perils Insured Against provision simply defines tear out coverage as included as part of covered loss to property, but excluded when *the loss* is excluded.
>      As noted above, based on our analysis in Dodge, we find that the loss caused by water damage is excluded by the WDE Endorsement. Hence, the loss, *including* tear out costs, is otherwise excluded in the policy, and thus, the exception to c. (5) does not provide coverage for tear out costs here. As a result, no ambiguity or conflict exists within these provisions of the policy. The loss is left expressly excluded under the WDE Endorsement.

Panettieri, 344 So. 3d at 39–40 (citation and footnote omitted).

The Insureds argue that this Court should follow the holding and reasoning from Security First Insurance Co. v. Vazquez, 336 So. 3d 350, 351 (Fla. 5th DCA 2022), reh'g denied (Mar. 25, 2022), review dismissed, SC22-583, 2022 WL 1764701 (Fla. May 31, 2022), and Security First Insurance Co. v. Nichols, 48 Fla. L. Weekly D837 (Fla. 6th DCA Apr. 21,

9

2023) (per curiam affirmance citing to <u>Vasquez</u>), rather than follow the reasoning of <u>Dodge</u>, <u>Panettieri</u>, and <u>Rosa</u>.  We decline.

As an initial matter, <u>Vazquez</u> can be distinguished from the present matter. In that case, the Court noted that Security First could have, but did not, expressly recite that the tear-out costs were subject to the $10,000 limit of liability contained in the LWD Endorsement. The Court reasoned that because the limit of liability provision in Security First's LWD Endorsement could reasonably be interpreted in each party's favor, and because the ambiguity was created by Security First, the Court affirmed the lower court's ruling in favor of the insured homeowner. <u>Vazquez</u>, 336 So. 3d at 353.

In the case before us, however, the LWD endorsement in PTIC's policy expressly provides that "[t]he <u>total limit of liability for all damage to covered property provided by this endorsement is $10,000.00 per loss</u>. This limit applies to all damaged covered property under Coverage A, B, and C combined," and "[t]<u>his limit also includes the cost of tearing out</u> and replacing any part or portion of the covered building or other structure necessary to access or repair that part or portion of the system or appliance from which the discharge occurred or caused the overflow." (emphasis added). Because of the difference in the relevant policy

language, <u>Vazquez</u> is not applicable and we decline to follow it. We continue to follow the precedent set by the Courts in <u>Dodge</u>, <u>Panettieri</u>, <u>Rosa</u>, and <u>Santana</u>.

Accordingly, we reverse and remand for entry of summary judgment in favor of PTIC.

Reversed and remanded.